# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND L. WASHINGTON, IDOC # B60914, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL NO. 12-223-GPM ) |
| GLADYSE TAYLOR, et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Raymond L. Washington, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is incarcerated in the Hill Correctional Center ("Hill"), brings this action pro se pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. Washington's complaint now is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though a court is obligated to accept factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. However, the factual allegations of a pro se complaint are to be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

According to the allegations of Washington's pro se complaint in this case, on September 12, 2010, Washington, who was incarcerated at the time in the Pinckneyville Correctional Center ("Pinckneyville"), was in an exercise yard at Pinckneyville when he was assaulted by another prisoner. Washington claims that he rolled his assailant over on his back but never threw a punch in his own defense. Washington alleges that, although he was not fighting and instead was merely defending himself, Defendant Cynthia Jordan, a guard at Pinckneyville, sprayed Washington in the face with a chemical agent (probably pepper spray). Washington claims that the use of the chemical agent was unwarranted and that, due to the chemical agent, he suffered burning sensations for three days, and continues to suffer from a ringing in his left ear, blurriness in his eyes, and an inability to taste food properly. As a result of the incident on September 12, 2010, Washington was issued two disciplinary charges, one for disobeying a direct order and one for fighting. On September 21, 2010, an adjustment committee at Pinckneyville found Washington not guilty of the charge of disobeying

a direct order, but found Washington guilty of fighting and recommended that Washington be sentenced to one month's segregation, one month's reduction to C-grade, and one month's loss of good conduct credit or statutory good time. The adjustment committee's sentence subsequently was approved by Defendant Randy Davis, the warden of Pinckneyville. On January 2, 2011, following Washington's release from segregation, Washington asked Jordan why she had sprayed him with a chemical agent even though Washington was not fighting and was in compliance with Jordan's orders. According to Washington, Jordan replied, "Fuck you[,] nigga, I'll spray your bitch-ass again! You act like you're a good guy, but you know what you did to me in Pontiac C.C." Doc. 1 at 5 ¶ 10. When Washington informed Jordan that he had filed a grievance against her and intended to bring a lawsuit against her, Jordan supposedly replied, "If you file anything on me, I'll have your ass put back in Seg and moved out of here!" *Id*. at ¶ 12. Washington alleges that later the same day Jordan came to his cell and told him, "If you file anything on me, your ass is gone and you know I'm on the Committee, just try me!" *Id*. at ¶ 14. According to Washington, ten days later Jordan again came to Washington's cell and repeated her threat to have him transferred if he filed any complaints about her. *See id*. On March 2, 2011, Washington was transferred to Hill. *See id*. at ¶ 15. When Washington asked why he had been transferred, he was told by IDOC officials that it was because he had "[e]nemy issues" at Pinckneyville. *Id*. at ¶ 16.

As an initial matter, the Court notes that Washington's complaint is devoid of allegations concerning Davis and Defendant Gladyse Taylor, the former director of the IDOC. However, 42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). *See also Burks v.*

*Raemisch*, 555 F.3d 592, 593, 596 (7th Cir. 2009) (citing *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)) ("Section 1983 does not establish a system of vicarious responsibility" and therefore "public employees are responsible for their own misdeeds but not for anyone else's."); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"). Accordingly, a Section 1983 plaintiff must make allegations that "associate specific defendants with specific claims . . . so [the] defendants are put on notice of the claims brought against them and so they can properly answer the complaint." *Willis v. Hulick*, Civil No. 09-cv-447-JPG, 2010 WL 358836, at *2 (S.D. Ill. Jan. 25, 2010) (citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Said differently, a Section 1983 plaintiff "cannot state a claim against a defendant [merely] by including the defendant's name in the caption" of a complaint. *Allen v. Feinerman*, Civil No. 07-cv-805-MJR, 2009 WL 90118, at *2 (S.D. Ill. Jan. 14, 2009) (quoting *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)). Washington has not stated a claim for relief against Davis and Taylor.[1]

---

1. To the extent Washington's claim against Davis under 42 U.S.C. § 1983 is premised upon Davis's approval of the disciplinary sentence recommended for Washington by the adjustment committee at Pinckneyville, any such claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* decision holds, of course, that a plaintiff convicted or sentenced for an offense may not bring an action for damages under Section 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," save when "the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487. The rule of *Heck v. Humphrey* extends to civil rights claims arising out of prison disciplinary hearings. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Dixon v. Chrans*, 101 F.3d 1228, 1230-31 (7th Cir. 1996); *Miller v. Indiana Dep't of Corr.*, 75 F.3d 330, 331 (7th Cir. 1996). There is no evidence that Washington's disciplinary sentence has been invalidated.

The Court turns to Washington's claims against Jordan for excessive force and retaliation. When a prisoner brings an excessive force claim, a court's task "is to determine 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Whether the defendants' actions were done in a malicious and sadistic manner to cause harm is a strict and fairly high threshold. Factors relevant to [the] inquiry include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Id*. "Infliction of pain that is 'totally without penological justification' is *per se* malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)). Still, "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Thus, an excessive force claim "cannot be predicated on a *de minimis* use of force" and "[i]nstead, the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore*, 358 F.3d at 504 (quoting *Hudson*, 503 U.S. at 10). Importantly, however, a prisoner claiming excessive force need not establish serious bodily injury, because otherwise the Constitution "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. With regard to the use of chemical agents, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). Use of force against an unresisting prisoner violates

clearly-established Eighth Amendment standards. *See, e.g., Hill v. Shelander*, 992 F.2d 714, 718-19 (7th Cir. 1993) (denying qualified immunity to a prison guard who was alleged to have physically pulled a prisoner out of his cell by the prisoner's shoulder and hair, slammed the prisoner's head against the bars of an adjacent cell, and struck the prisoner twice in the face and kneed the prisoner in the groin).

In this case, it is not clear from the complaint whether Jordan's use of pepper spray against Washington was penologically justified or instead sadistic and intended merely to cause harm. The allegations of Washington's complaint assert both that at the time Jordan sprayed him, he was not resisting her orders (as the adjustment committee also found, when it determined that Washington was not guilty of disobeying a direct order) and that Jordan's use of pepper spray was prompted by personal animus. "After . . . Lt. Jordan noticed who the Plaintiff was," according to Washington's complaint, "[t]he Lt. then sprayed the Plaintiff with some kind of chemical agent in the mouth, left ear and eye even though the Plaintiff was in full compliance." Doc. 1 at 5 ¶ 4. Similarly, the testimony of Randall Redding, a guard at Pinckneyville, at Washington's adjustment committee hearing was that "I didn't see the fight start, but I saw Washington on the bottom. He flipped the other guy . . . over. When Lt. Jordan said 'Stop,' Washington did. She maced them because [Washington's assailant] kept swinging." Doc. 1-1 at 1. It may be that Jordan's conduct in pepper-spraying Washington was merely negligent, in which case Washington would have no constitutional claim against Jordan, because 42 U.S.C. § 1983 does not punish merely negligent conduct on the part of state actors. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (a "mere lack of due care by a state official" does not "'deprive' an individual of life, liberty, or property under the Fourteenth Amendment."); *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (in order

for a state prisoner to make out a Section 1983 claim for an Eighth Amendment violation, negligence or even gross negligence is not enough; rather, a prisoner must show actual intent or deliberate indifference on the part of state actors). However, these are matters to be resolved on a much fuller record than is before the Court at this time. The Court concludes that Washington has stated a claim for use of excessive force against Jordan.

With respect to Washington's claim against Jordan for retaliation, in general a prisoner has a right under the First Amendment to file grievances and lawsuits complaining about the conditions of his or her confinement. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988). To show unlawful retaliation for constitutionally-protected speech or conduct, a plaintiff must prove three elements: first, that he or she engaged in constitutionally-protected speech or conduct; second, that but for the protected speech or conduct a defendant would not have taken an adverse action against the plaintiff; and third, that the plaintiff suffered a deprivation because of the defendant's action. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010); *Gunville v. Walker*, 583 F.3d 979, 983-84 & n.1 (7th Cir. 2009). In the past controlling authority in this Circuit did not require but-for causation in a case involving alleged retaliation for the exercise of First Amendment rights. *See, e.g., Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)) ("[A] plaintiff who complains that he was retaliated against for exercising his right of free speech need not prove that, had it not been for that exercise, the adverse . . . action that he is charging as retaliation would not have occurred. All he need prove is that his speech was a 'motivating factor' in the [defendant's] decision to take the adverse action."). However, the Supreme Court of

the United States clarified recently that, unless a federal statute provides otherwise, a plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (to prevail in an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged . . . decision."); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) ("[T]he decisions which say that a plaintiff need only prove that his speech was *a* motivating factor in the defendant's decision [to retaliate] do not survive *Gross*[.]") (emphasis in original).

Once a plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011) (citing *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006)). *See also Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011) (if a plaintiff shows "a violation of his rights was a sufficient condition of the harm for which he seeks redress" the defendant may "rebut with evidence that the plaintiff's exercise of his constitutional rights though a sufficient condition was not a necessary condition" of the harm or, in other words, the defendant must show that the adverse action would have occurred anyway). "If the defendant carries that burden, the plaintiff must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision." *Zellner*, 639 F.3d at 379 (citing *Massey*, 457 F.3d at 717). A plaintiff claiming retaliation can show pretext either (1) directly, with evidence showing that "retaliation was the most likely motive for" an adverse action or (2) indirectly, by showing that a defendant's "proffered justifications were not

worthy of credence." *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699-700 (7th Cir. 2002). To show that the defendant's proffered justification was not worthy of credence, a plaintiff must show that the defendant's justification had no basis in fact, was not the real reason for the adverse action, or was insufficient to warrant the adverse action. *See id*. at 700. In other words, "a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason [for an adverse action] is a lie." *Zellner*, 639 F.3d at 379 (citing *Vukadinovich*, 278 F.3d at 699).

In this case, Washington's complaint alleges that, on three separate occasions, Jordan threatened to have Washington transferred to another prison if he brought any sort of official complaint against her.[2] The fact that approximately a month and a half after Jordan made the last of these threats, on or about January 12, 2011, Washington was transferred from Pinckneyville to Hill is itself some circumstantial evidence of Jordan's retaliatory motive. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)) (circumstantial evidence of retaliation includes "suspicious timing, ambiguous statements, behavior toward or comments directed at other [persons] in the protected

---

2. It perhaps is worth noting that the fact that Jordan's alleged threats of retaliation were framed in extremely derogatory and even racist language is not of constitutional importance. *See Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008) (holding that racist and threatening statements by state prison guards in retaliation for a prisoner's filing of grievances did not violate the prisoner's constitutional right to speak and to petition the government for redress of grievances, and noting that "the Constitution does not compel guards to address prisoners in a civil tone using polite language."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (collecting cases); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) ("Defamation is not a deprivation of liberty within the meaning of the due process clause. No more is a derogatory racial epithet.") (citations omitted).

group, and other bits and pieces from which an inference of discriminatory intent might be drawn"); *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (noting that temporal proximity of an adverse action to a protected activity is proof of causation); *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 790 (7th Cir. 2001) ("When an adverse . . . action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case [of retaliation] is typically satisfied."); *Sanchez v. Henderson*, 188 F.3d 740, 747 n.4 (7th Cir. 1999) (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994)) ("[S]uspicious timing can raise an inference of discrimination sufficient to satisfy the causation element of the prima facie case[.]"); *Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1011 (7th Cir. 1997) ("Suspicious timing does constitute circumstantial, or indirect, evidence to support a claim of intentional discrimination or disparate treatment."). On the other hand, the proffered reason for the transfer, that Washington had enemies at Pinckneyville, necessitating his transfer to another IDOC facility, has some support in the record: after all, according to the allegations of Washington's own complaint, Washington was the victim of an assault by another prisoner at Pinckneyville. However, the questions of retaliatory motive and pretext presented by this case will have to be resolved at a later stage of the case. Washington has stated a claim for retaliation against Jordan.

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that Washington's complaint fails to state a claim upon which relief may be granted with respect to Gladyse Taylor and Randy Davis, and therefore Gladyse Taylor and Randy Davis are **DISMISSED with prejudice** from this action. Washington may proceed on his Eighth Amendment claim against Jordan for use of

excessive force and on his First Amendment claim against Jordan for retaliation. The Court having determined that Washington may proceed against Jordan on his claims for excessive force and retaliation, it is hereby **ORDERED** as follows:

1. The Clerk of Court shall prepare for Defendant **JORDAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to Jordan's place of employment as identified by Washington. If Jordan fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within **thirty (30) days** from the date the form was sent, the Clerk shall take appropriate steps to effect formal service on Jordan, and the Court will require Jordan to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

2. It is **further ORDERED** that, if Jordan can no longer can be found at the work address provided by Washington, the employer shall furnish the Clerk with Jordan's current work address, or, if not known, Jordan's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court's file or disclosed by the Clerk.

3. It is **further ORDERED** that Washington shall serve upon Jordan (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Washington shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Jordan or counsel. Any paper received by a district judge or magistrate judge that has not

been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

4. Jordan is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

5. Pursuant to SDIL-LR 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings.

6. Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by SDIL-LR 72.2(b)(2) and 28 U.S.C. § 636(c), **should all the parties consent to such a referral**.

7. Finally, Washington is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and any opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of Court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: March 23, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge