IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND L. WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-223-GPM |
| | ) |
| CYNTHIA JORDAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

This matter comes before the Court on Defendant Cynthia Jordan's motions for summary judgment filed on July 16, 2012 (Doc. 19) and November 30, 2012 (Doc. 36) respectively. Plaintiff Raymond Washington is currently incarcerated at Hill Correctional Center ("Hill.")  He filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was incarcerated at Pinckneyville Correctional Center ("Pickneyville"). Specifically, Plaintiff claims Defendant used excessive force when she dispensed a chemical agent to break up a physical altercation between Plaintiff and another inmate.  Additionally, Plaintiff claims Defendant orchestrated his transfer from Pickneyville to Hill in retaliation for filing a grievance against Defendant regarding her use of the chemical agent.   For the following reasons, summary judgment is granted in favor of Defendant.

**FACTS**

During the relevant time period, Plaintiff was an inmate at Pinckneyville (Doc. 37). Defendant, Cynthia Jordan, was a correctional lieutenant stationed at Pickneyville (Doc. 37).   It is

undisputed that on September 12, 2010, Plaintiff was attacked by another inmate, Travon Flagg, while in the yard (Docs. 37, 38-1). At the time of the altercation, there were over 100 inmates on the yard, and Defendant was one of only two correctional officers assigned to the yard (Doc. 37-2). Defendant immediately responded to the altercation between Plaintiff and Flagg, and gave both men direct orders to cease the altercation (Doc. 37-2). Plaintiff has put forth evidence demonstrating that he complied with Defendant's orders (Docs. 1-1, 38-1). However, it is undisputed that Flagg did not comply and continued to throw punches (*See* Docs. 37, 38-1). According to Defendant, "security concerns escalated as a number of other offenders on the yard began to aggressively approach the situation" (Doc 37-2). She claims she thought it was necessary to use her chemical spray in order to control the situation and restore order and discipline, and she used only the amount necessary to do so (Doc. 37-2).

After Defendant dispersed her chemical spray, Plaintiff and Flagg were separated, subdued and handcuffed, and then taken to the Health Care Unit for medical care (Docs. 37, 37-2). Sometime in November 2010[1], Plaintiff filed a grievance against Defendant regarding her use of chemical spray during the altercation. On March 2, 2011, Plaintiff was transferred from Pickneyville to Hill (Doc. 37).

## ANALYSIS

### A.  Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure

---

[1] While both parties agree that a grievance was filed, it is not attached to either Defendant's motion or Plaintiff's response. The Court is assuming the grievance was filed by Plaintiff sometime in November 2010 based on a letter from the Administrative Review Board that was attached to the Complaint (Doc. 1-1). The letter states it is in response to a grievance that it received on November 30, 2010 that was related to the disciplinary ticket issued by Defendant and the subsequent disciplinary hearing held as a result of the September 12, 2010 incident (Doc. 1-1, p. 6).

56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party.  Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . .  A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).   No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

**B.  Excessive Force**

Correctional officers have the right to use reasonable force against a prison inmate to enforce discipline and to maintain institutional security.  *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  However, the intentional use of excessive force by prison officials against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is actionable under 28 U.S.C. § 1983. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *De Walt v. Carter*, 224 F.3d 607, 619 (7th Cir, 2000).   But not every "malevolent touch" by a prison official implicates the Constitution.  *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009), *quoting Hudson,* 503 U.S. at 9.   The amount of force must be "of a sort repugnant to the conscience of mankind" to constitute a

violation of the Eighth Amendment. *Lewis*, 581 F.3d at 475, *quoting Hudson,* 503 U.S. at 9–10 (quotations omitted).

The Supreme Court has held that when prison officials are accused of using excessive force, the relevant inquiry is "whether force was applied in a good-faith manner to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, (1992), *citing Whitley v. Albers,* 475 U.S. 312, 320-21, (1986). In undertaking this inquiry, several factors are relevant to a court's analysis, including whether jail officials perceived a threat to their safety and the safety of other inmates, whether there was a genuine need for the application of force, whether the force used was commensurate with the need for force, the extent of any injury inflicted, and whatever efforts the officers made to temper the severity of the force they used. *Rice ex rel. Rice*, 675 F.3d at 668. "In order to survive a motion for summary judgment, the prisoner must have evidence that "'will support a reliable inference of wantonness in the infliction of pain.'" *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Regarding the use of chemical spray, it is well-established that the use of mace, tear gas, or other chemical agents of a like nature is permissible and does not constitute excessive force when reasonably necessary to protect and maintain security and discipline in a prison. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).

Plaintiff alleges that Defendant used excessive force when she dispensed a chemical agent to break up the physical altercation between Plaintiff and Flagg. Specifically, Plaintiff claims the use of chemical spray constitutes excessive force because he had complied with Defendant's order to stop fighting and stood up from the ground, and it was only then that Defendant sprayed him in the face (Doc. 38-1). However, Plaintiff's attempt to portray Defendant as using chemical spray on a compliant inmate in a situation that posed no threat to her is belied by the realities of an inmate

fight in a volatile prison environment.

The Seventh Circuit has repeatedly recognized that a fight among inmates poses a threat to the safety of the inmates, a threat to the safety of the officers who must intervene to stop it, and a threat to the maintenance of good order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010); *see also Rice ex. Rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 668 (7th Cir. 2012). The evidence in this case demonstrates that Defendant used her chemical spray to stop the fight between Plaintiff and Flagg in order to maintain or restore discipline, and not maliciously and sadistically to cause Plaintiff harm. At the time Defendant dispersed her chemical spray, neither Plaintiff nor Flagg had been subdued or handcuffed. In fact, Flagg refused to comply with Defendant's orders and was still throwing punches. Defendant did not know from her initial observations of the on-going fight which inmate was the aggressor. Defendant did not know whether either inmate was armed. Defendant did not know if Plaintiff would retaliate while Flagg was being subdued. There were over 100 other inmates on the yard at the time of the altercation, and Defendant did not know whether other inmates were going to jump in the fight. Therefore, even assuming Plaintiff's version of facts is true, and he had in fact complied with Defendant's order to stop fighting and stood up from the ground, the threat posed by the fight was still ongoing and Defendant could have reasonably concluded that there was a need to use force.

The evidence in this case also demonstrates that Defendant used the chemical agent in a quantity necessary to subdue the inmates, secure compliance with her orders, and assure the safety of the officers and inmates present. By Plaintiff's own self-serving estimate, Defendant dispersed the chemical spray for no more than 20 seconds (Doc. 37-1). This amount was reasonable,

especially considering Plaintiff and Flagg were not stationary inmates in an enclosed space; they were in motion and outside in the yard. *See, e.g., Smith v. Dart*, No. 10 C 6395, 2013 WL 315742, at *10 (N.D. Ill. Jan. 28, 2013) (holding the dispersion of chemical spray at inmate in his cell for up to one-minute was reasonable).

The Court concludes that given the obvious threat posed by the fight between Plaintiff and another inmate on the yard, Defendant is entitled to judgment as a matter of law that she did *not* use excessive force when she dispersed chemical spray to break up the fight and subdue both inmates. As the Seventh Circuit stated, "[W]e must remember that prisons are not country clubs, nor, for that matter, democracies and prison officials' actions in using chemical agents in a humane manner to control recalcitrant inmates who pose threats to institutional security will rarely be a proper basis for judicial oversight." *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir. 1990), *citing Matzker v. Herr,* 748 F.2d 1142, 1148 (7th Cir. 1984). Summary judgment is granted in favor of Defendant Jordan.

**C. Retaliatory Transfer**

Plaintiff alleges that Defendant orchestrated his transfer from Pickneyville to Hill in retaliation for the grievance he filed against her. However, the evidence in this case demonstrates that Plaintiff was transferred for a constitutionally permissible reason, and not in retaliation for filing a grievance.

Prisoners do not have a constitutional right to remain in or be transferred to a correctional institution of their own choosing. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). Additionally, prison officials have the discretion to transfer prisoners for any constitutionally permissible reason. *Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir.1982). Nevertheless,

transferring a prisoner to another prison in retaliation for filing grievances would be unconstitutional. *See, e.g., Higgason v. Farley,* 83 F.3d 807, 810 (7th Cir. 1996) ("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access, he has a claim under § 1983.")

In retaliation cases, the prisoner has the initial burden to prove that his protected action was a substantial or motivating factor in a defendant's actions. *Greene v. Doruff*, 660 F.3d 975, 977, 980 (7th Cir. 2011), *discussing Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287 (1977). The prisoner may demonstrate improper motive by pointing to evidence suggesting a retaliatory motive, such as suspicious timing or statements by the defendants indicating as much. *Mullin v. Gettinger,* 450 F.3d 280, 285 (7th Cir. 2006); *Culver v. Gorman & Co.,* 416 F.3d 540, 545–50 (7th Cir. 2005). Only after the plaintiff meets this initial burden does the burden shift to a defendant to prove that the same actions would have occurred in the absence of the protected conduct. *Greene*, 660 F.3d at 980.

As evidence that his transfer was retaliatory, Plaintiff claims Defendant told him she would have him put in segregation or transferred from Pickneyville if he filed a grievance against her (Doc. 38-1). Plaintiff also states that within months of filing his grievance against Defendant, he was transferred to Hill (Doc. 38-1). However, for a number of reasons, this evidence is insufficient to meet Plaintiff's initial burden of showing that his grievance against Defendant was a substantial or motivating factor in his transfer.

First, the evidence in this case demonstrates that there was a legitimate independent ground for Mr. Washington's transfer. When Plaintiff asked why he had been transferred to Hill, the Illinois Department of Corrections informed him that he was transferred to Hill "due to an enemy

issue at the Pickneyville Correctional Center" (Doc. 1-1).  Furthermore, Plaintiff had been requesting a transfer out of Pickneyville as far back as December 2008 (Doc. 1-1).

Additionally, the chronology of events does not support a valid inference of retaliatory motive.  A plaintiff cannot establish retaliation simply by showing that the protected activity happened before the defendants took their action.  *See, e.g., Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720, 728 (7th Cir. 2003) (noting that one event following closely upon another is not dispositive in proving that the first act caused the second); *see also Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640, 642 (7th Cir. 2002) ("mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue"). Here, it appears that Mr. Washington filed his grievance against Defendant sometime in November 2010, but he was not transferred from Pickneyville until March 2, 2011.   Thus, there was at least a three month delay from the time he filed his grievance until the time he was transferred.   This time period is insufficient to support an inference that Plaintiff's transfer was motivated by retaliation. *Compare Benson v. Cady*, 761 F.3d 335 (7th Cir. 1985) (holding period of five months between the filing of a lawsuit and inmate's transfer "greatly weakens any inference that the transfer was in retaliation for the lawsuit"), *with Murphy v. Lane*, 833 F.2d 106, 109 (7th Cir. 1987) (holding an inmate's transfer "immediately"—or in any event, no more than two months—after filing a lawsuit against the prison permitted the inference that the transfer was retaliatory).

Finally, Plaintiff's claim of retaliation is undercut by the nature of the transfer. Pickneyville is a level two institution, and so is Hill.   Since Plaintiff was transferred to a similar, not worse, environment, he can hardly claim a punitive retaliatory intent.

The Court concludes that no reasonable jury could find that Plaintiff's transfer from Pickneyville to Hill was substantially motivated by Defendant's desire for retaliation against Plaintiff for filing a grievance.   Summary judgment will be granted in favor of Defendant Jordan.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Defendant Cynthia Jordan (Docs. 19, 36) are **GRANTED**.   Defendant is **DISMISSED** from this action with prejudice.

**IT IS SO ORDERED.**

DATED:   April 19, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge